UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X
MARTIN CARILLO,

        *Petitioner*,

-against-                                    **MEMORANDUM AND ORDER**

        22-CV-206 (KAM)

SUPERINTENDENT OF GREEN HAVEN
CORRECTIONAL FACILITY,

        *Respondent*.

---------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

    *Pro se* Petitioner Martin Carillo ("Petitioner") currently incarcerated in the custody of the New York State Department of Corrections and Community Supervision, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See* ECF No. 1, Petition for Writ of Habeas Corpus ("Pet."), at 1.) Petitioner was convicted after a jury trial of murder in the second degree and robbery in the first degree, and sentenced on April 17, 2017, to an indeterminate sentence of 25 years to life in prison, which was subsequently reduced to 20 years to life by the Appellate Division. (*See* ECF No. 1, Petition for Writ of Habeas Corpus ("Pet."), at 1.) The Petitioner claims that (1) his conviction was against the weight of the evidence and should be reversed, and (2) the sentence was excessive and should be reduced in the

1

interest of justice.  (Pet. at 5-6.)  For the reasons set forth below, the Petition is respectfully DENIED.

<u>**BACKGROUND**</u>

**I.  Factual Background[1]**

**A.  Robbery of the Juarez Brothers**

On September 7, 2014, at approximately 1:00 AM, brothers Luis Juarez ("Luis") and Juan Carlos[2] ("Juan Carlos") Juarez were walking home from working at a restaurant when they were confronted by Petitioner and co-defendant Carmello Bello ("C. Bello") on Myrtle Avenue between Tompkins and Marcy Avenues.  (Trial Transcript[3] ("Tr.") at 294-95, 298-99, 301-02, 353, 427.)

C. Bello approached the Juarez brothers and asked them to give him money.  (*Id.* at 299-300.)  After Luis and C. Bello exchanged a few words, C. Bello hit Luis.  (*Id.* 300-01.)  By the time Luis hit C. Bello back, a group of co-defendants, including Miguel Bello ("M. Bello") and Javier Ortiz ("Ortiz") had converged upon the scene and joined in the altercation.  (*Id.* at 302, 310-11.)  Although Luis initially attempted to fight back, upon realizing more people were coming to the aid of C. Bello, he ran

---

[1] Because Petitioner was convicted, the court summarizes the facts in the light most favorable to the verdict.  *See United States v. Wasylyshyn*, 979 F.3d 165, 169 (2d Cir. 2020) (citing *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012)).
[2] Juan Carlos Juarez is referred to as "Juan," "Juan Carlos," and "Carlos" interchangeably throughout the court records.  (*See, e.g.,* Tr. at 300, 351, 427.)
[3] The transcript from Petitioner's trial ("Tr.") consists of ECF Nos. 4-1 through 4-9.  Citations to this transcript refer to the internal continuous pagination indicated at the top right of each transcript page.

2

away.  (*Id.* at 302.)   Juan Carlos stayed behind and continued fighting the men who joined C. Bello and Petitioner.  (*Id.* at 303.)

While attempting to run away, Luis was followed by M. Bello. (*Id.* at 302.)  Luis ran around a car, intending to return and check on his brother, when three or four men grabbed Luis and threw him to the ground and began kicking and hitting him.  (*Id.* at 302, 305.)  Luis testified that he and his brother were attacked by "seven to eight people in total."  (*Id.* at 303.)  Luis testified that all of the individuals involved in the altercation participated in striking him and his brother, and that no one took any action to stop the attack.  (*Id.* at 318-21.)

During the attack, Luis testified to hearing C. Bello shout to the group to "cut him, "cut him", but it was unclear whether C. Bello was referring to Luis, or his brother Juan Carlos.  (*Id.* at 304.)  Luis testified that, once the co-defendants stopped hitting him, he noticed that the men attacking him had knives. (*Id.* at 304-06.)  Eventually, the fight stopped, and the group fled with the brothers' belongings.  (*Id.* at 306.)  At this point, Luis ran to find police officers for assistance.  (*Id*. at 306-07.)

**B.  Apprehension of Petitioner and Co-Defendants**

At approximately 1:05AM, upon finding Officers Paul Ianuale ("Officer Ianuale") and Officer Juan Urgiles-Toral ("Officer Urgiles-Toral") at the intersection of Marcy and Myrtle Avenues, Luis informed the officers of the attack, explaining he and his

3

brother had been robbed. (*Id*. at 308, 310, 403-05, 672-76, 703-04.) Luis was able to point out the men who attacked him and his brother. (*Id*. at 310-12, 676-77.) As some of the co-defendants continued westbound and passed Officers Ianuale and Urgiles-Toral, Officer Urgiles-Toral stopped M. Bello. (*Id*. at 501-502, 676, 808-09.) Officer Ianuale and Luis Juarez continued pursing the rest of the men, and Officer Ianuale noticed that the back of Luis's shirt was soaked in blood, indicating Luis had been stabbed. (*Id*. at 676-78.)

At approximately 1:50 AM, while continuing the pursuit, Officer Ianuale noticed a group of four to five police officers on the corner of Marcy and Myrtle Avenues. (*Id*. at 679, 753.) This group of officers included Officers Wayne Jenkins ("Officer Jenkins"), Officer Gil Fuentes ("Officer Fuentes"), Officer Brenda Sazonova ("Officer Sazonova"), and Officer Vanessa Merino ("Officer Merino"). (*Id*. at 567-70, 583-85, 606-12, 644-46, 681-82, 728-29, 753-56, 871-73.) Upon passing the group of officers, Officer Ianuale yelled at them to "stop those guys," referring to the group of co-defendants. (*Id*. at 681.)

Upon hearing this, Officer Jenkins immediately seized co-defendant Ortiz and handcuffed him. (*Id*. at 610.) A search of Ortiz revealed no weapons, but Ortiz's hands and wrists were so slippery with blood that Officer Jenkins struggled to put him in

4

handcuffs. (*Id.* 610, 637.) Upon reaching the precinct, Officer Jenkins vouchered Ortiz's clothing. (*Id.* 613-16).

While Officer Jenkins was arresting Ortiz, the other officers continued the chase, with Officer Merino stopping to radio for additional assistance before continuing to pursue Petitioner and Celestino Martinez ("Martinez"). (*Id.* at 878-83.) Officers Sazonova and Fuentes also continued their pursuit of Petitioner and Martinez. (Tr. at 570-73, 883.) Officer Sazonova eventually found Petitioner and Martinez hiding behind the bushes of a brownstone, 18A Vernon Avenue. (*Id.* at 574-75.) At this point, Petitioner was apprehended and taken back to the precinct. (*Id.* at 575.) Once the defendants had been taken away from the scene, an ambulance arrived to tend to Luis Juarez. (*Id.* at 312-14.) Given the severity of his injuries, Luis was not allowed to see his brother, and was instead taken straight to Kings County Hospital. (*Id.* at 314-15.)

### C. Death of Juan Juarez

While Luis Juarez and the officers pursued the defendants and obtained help, a different police officer, Ronald Stafford ("Officer Stafford"), was alerted by a passing motorist that there was a person in need past the Myrtle Avenue-Thompkins Avenue intersection. (*Id.* at 531-33.) Officer Stafford observed Juan Carlos "stumbling and going very slowly" before falling to the ground. (*Id.* at 534.) As he was rendering aid, Officer Stafford

observed a lot of blood on Juan Carlos's clothing and radioed for help.  (*Id.*)  Officer Stafford rendered aid for approximately 30 minutes, during which he tried and failed to communicate with Juan Carlos.  (*Id.* at 535-36.)  While providing aid to Juan Carlos, Officer Stafford was also approached by another individual who informed him of "at least four or five men fleeing . . . in a westerly direction on Myrtle."  (*Id.* at 535.)

Juan Carlos was tended to by emergency services and taken to the hospital.  (*Id.* at 685.)  He was taken into surgery, where he ultimately died of his injuries.  (*Id.* at 316.)

On September 8, 2014, Dr. Kristin Roman ("Dr. Roman") of the Office of the Chief Medical Examiner ("OCME") performed an autopsy on Juan.  (*Id.* at 1205-10.)  Dr. Roman found Juan Carlos had blunt force injuries along the right-side length of his torso, along with more than a dozen stab wounds on the torso and left arm.  (*Id.* at 1210-12.)  Dr. Roman testified at trial that the wounds on Juan Carlos's arms could be considered defensive wounds.  (*Id.* at 1213, 1220.)  In addition to defensive wounds, Dr. Roman also noted stab wounds that went through Juan Carlos's heart.  (*Id.* at 1218-26.)  Dr. Roman testified that she was "pretty certain that all of these wounds were caused by a knife."  (*Id.* at 1226.)

### D.  Police Investigation of the Crime

After being released from the hospital, Luis Juarez was interviewed by the NYPD and a prosecutor at the precinct.  (*Id.* at

316-17.)   On September 12, 2014, while being interviewed at his home, he identified for the NYPD individuals who had not yet been arrested but participated in the attack.   (*Id.*)

In addition to the interviews of Luis and the autopsy performed on Juan Carlos, officers also secured evidence from the defendants and from the crime scene.   Officer Merino recovered and vouchered a wood-handled gravity knife from the area near the initial altercation.   (*Id.* at 893-94, 941-42.)   Officer Stafford also recovered a bloody folding knife from M. Bello's pocket during a frisk after M. Bello's arrest.   (*Id.* at 538-40, 812.)   In total, three knives were vouchered–two folding knives, and one non-folding knife.   (*Id.* at 698-701.)   Officers also took blood swabs of the scene, in front of 887 and 874 Myrtle Avenue.   (*Id.* at 188-90.)   Officers also obtained and vouchered a shoulder bag that M. Bello had on his person at the time of his arrest.   (*Id.* at 812-13.)

Similarly to Ortiz, officers vouchered the clothing and belongings of defendants C. Bello, Martinez and Petitioner, and subsequently tested them for blood.   (*Id.* at 613-16, 688-701, 712-19.)   On September 18, 2014,[4] Detective John Cataldi ("Det. Cataldi") obtained DNA samples from defendants C. Bello, M. Bello,

---

[4] During his testimony, Detective Cataldi was erroneously asked if he took the samples on September 18, **2015.**   (Tr. at 986.)   The transcript notes that the year was incorrect, recording the date in the question as "September 18 of 2015 (sic)."   (*Id.*)

Ortiz, Martinez and Petitioner.  (*Id*. at 986-87.)  The physical evidence was tested for DNA and fingerprints.  (*Id*. at 1088-94.) Although clothing obtained from C. Bello, Martinez and Ortiz were found to contain both Juan Carlos and Luis's DNA, Petitioner's t-shirt was found to contain no blood from the brothers.  (*Id*. at 1120-46.)  Petitioner's shirt did contain three bloodstains, all of which were determined to be Petitioner's.  (*Id*.)

## II.  Trial

Following his arrest, Petitioner, along with co-defendants C. Bello, M. Bello, and Ortiz, and Martinez, was indicted and charged with two counts of second-degree murder (N.Y. Penal Law §§ 125.25(1), (3)), one count of first-degree manslaughter (N.Y. Penal Law § 125.20(1)), four counts of first-degree robbery (N.Y. Penal Law §§ 160.15(1), (3)), one count of first-degree assault (N.Y. Penal Law §§ 120.10(1)), three counts of second-degree robbery (N.Y. Penal Law § 160.10(1), (2)(A)), two counts of third-degree robbery (N.Y. Penal Law § 160.05), one count of second-degree assault (N.Y. Penal Law § 120.05(2)), two counts of fourth-degree criminal possession of a weapon (N.Y. Penal Law § 265.01(2)), and one count of fifth-degree criminal possession of stolen property (N.Y. Penal Law § 165.40). (Respondent's Brief to the Appellate Division ("Resp. Brief") at 4.)  Petitioner was tried alongside M. Bello, C. Bello and Ortiz, while Martinez was tried separately.  (Resp. Brief at 1.)

8

Opening statements for Petitioner's trial were delivered on February 3, 2017.  (Tr. at 89.)   The prosecution called as witnesses (1) Michelle Juarez, the sister of Luis and Juan Carlos; (2) Police Officer David Sullivan, who secured the crime scene; (3) Luis Juarez; (4) Officer Stafford; (5) Officer Sazonova; (6) Officer Jenkins; (7) Officer Ianuale; (8) Officer Fuentes; (9) Officer Urgiles-Toral; (10) Officer Merino; (11) Detective John Cataldi, the lead investigator of Juan Carlos's death; (12) Detective Rene Orrego, who served as a Spanish interpreter for Luis Juarez's initial interview; (13) Meredith Gitter, an NYPD criminalist who analyzed evidence for fingerprints; (14) Daniel Ferrara, a specialist in the forensic biology laboratory of the OCME; and (15) Dr. Roman.  (*Id.* at 125-1305.)

At the close of the prosecution's case, counsel for Petitioner moved to dismiss the indictment against Petitioner for failure to present a prima facie case against him.  (*Id.* at 1344.)  The basis for this motion was the lack of weapons recovered from the petitioner, the lack of statements made by Petitioner during the incident, the lack of stolen property recovered from Petitioner, the lack of anyone else's blood on Petitioner, and the failure to link Petitioner to the crime via DNA or fingerprints.  (Tr. at 1344-45.)  Petitioner's counsel further argued that the "only evidence" against Petitioner was the testimony of Luis Juarez, and Petitioner's counsel characterized Luis's testimony as "wrong

about everything." (*Id.* at 1345.)   The trial court denied Petitioner's motion, along with similar motions filed by Petitioner's co-defendants. (*Id.* at 1356.)   The defense subsequently called as witnesses (1) Retired Detective David Ras, who conducted an interview of Officer Jenkins as part of the investigation; (2) Retired Detective Stilianos Panagopoulos, who interviewed Officer Stafford as part of the investigation; (3) Detective Alberto Fuentes, who interviewed Luis Juarez in Kings County Hospital. (*Id.* at 1359-1409.)

The jury was instructed on the elements of second-degree murder, first-degree manslaughter and felony murder, with robbery as the underlying felony, for the death of Juan Juarez. (Appellant's Brief to the Appellate Division ("Appellant Br.") at 14; Tr. at 1940-47.)   The jury was also instructed on first-degree robbery and the trial court gave an acting in concert instruction. (Tr. at 1949-56.)   The jury was also instructed on affirmative defenses to felony murder. (*Id.* at 1947-49.)

Ultimately, the jury[5] convicted Petitioner of murder in the second degree (felony murder) and robbery in the first degree and acquitted him of murder in the second degree (intentional murder) and manslaughter in the first degree. (Tr. at 2024-28.) Petitioner's co-defendants Ortiz and C. Bello were convicted of

---

[5] The case was tried before two juries, with one jury for Petitioner, C. Bello, and Ortiz, and the other jury for M. Bello. (*See, e.g.,* Tr. at 61, 1857.)

manslaughter in the first degree, murder in the second degree (felony murder), and robbery in the first degree, and acquitted of murder in the second degree (intentional murder). (*Id.*)  M. Bello was also found guilty of manslaughter in the first degree, murder in the second degree (felony murder), robbery in the first degree, and assault in the second degree[6], by a separate jury, and acquitted of murder in the second degree (intentional murder). (*Id.* at 1844-47.)

Petitioner's sentencing was conducted on April 17, 2017, and Luis Juarez made a victim impact statement. (ECF No. 4-10, April 17, 2017, Sentencing Transcript at 5-6.)  Petitioner was sentenced to twenty-five years to life in custody for the felony murder charge, and a concurrent twenty-five year term for the robbery in the first degree charge, plus four years of post-release supervision. (*Id.* at 28-30.)

**III. Direct Appeal**

Petitioner appealed to the Second Department on the basis that (1) no rational juror could have found Petitioner guilty beyond a reasonable doubt and the convictions were against the weight of the evidence, and (2) that the sentence of 25 years to

---

[6] The jury was not supposed to consider the assault count if they convicted M. Bello of count five (robbery); accordingly, the assault count was dismissed at sentencing (ECF No. 4-10, April 17, 2017, Sentencing Transcript at 32-33).

life imposed was excessive and should be reduced in the interest of justice. (Appellant Br. at 19, 31.)

On August 26, 2020, the Appellate Division affirmed Petitioner's conviction. *People v. Carillo*, 127 N.Y.S.3d 778, 779 (2d Dep't 2020). The Appellate Division held that (1) Petitioner failed to preserve his contention of insufficient evidence to support his conviction, and, regardless, the prosecution sufficiently established Petitioner's guilt beyond a reasonable doubt and the conviction was not against the weight of the evidence; (2) Petitioner's sentence was excessive, and should be reduced as a matter of discretion in the interest of justice. *Id.* at 778-79. Based on the holding that the sentence was excessive, the Appellate Division modified the judgment against Petitioner by reducing the term of imprisonment imposed on felony murder conviction to an indeterminate term of imprisonment of 20 years to life, and reducing the term of imprisonment imposed on the robbery conviction to a determinate term of 20 years with 4 years of post-release supervision. *Id.*

Petitioner requested permission to appeal the Appellate Division's order to the New York Court of Appeals on October 12, 2021. (ECF No. 4-13, Petitioner's Application for Leave to Appeal.) The New York Court of Appeals denied Petitioner's application for leave to appeal on November 10, 2021. *People v. Carillo*, 178 N.E.3d 431 (N.Y. 2021).

**IV.  The Instant Petition**

On January 10, 2022, Petition filed the instant application seeking a writ of habeas corpus pursuant to 28 U.S.C. §2254.  (*See generally* ECF No. 1, Petition for Writ of Habeas Corpus ("Pet.").)  Petitioner renews the claims he made on direct appeal that (1) his conviction was against the weight of the evidence; and (2) his sentence was excessive and should be reduced.  (*Id.* at 5-6.)  The Respondent filed his answer, the state court record, and his memorandum of law in opposition on February 25, 2022.  (*See* ECF No. 4, Respondent's Answer and attachments.)

On March 14, 2022, Petitioner submitted his reply, arguing that he was not guilty because he did "nothing to assist [his co-defendants] in their crimes, nor was he ever armed."  (ECF No. 5, Petitioner's Reply, at 2.)  Petitioner also requested that the Court assign him counsel to assist with his Petition in his Reply.  (*Id.*)  Subsequently, the Court received a letter from a non-party David Garcia, who offered to assist Petitioner "until he is assigned Counsel of his own."  (ECF No. 6, Letter from David Garcia.)

Dealing briefly with the aforementioned request for counsel made in the Reply and subsequent letter from Mr. Garcia, the Court denies both requests.  Because there is no constitutional right to representation in a habeas action, it is in the Court's discretion whether to appoint pro bono counsel. 18 U.S.C. § 3006A(a)(2)(B)

13

("Whenever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28."). "In making this discretionary determination, the Court must consider the same factors applicable to requests for pro bono counsel made by other civil litigants." *Garavito-Garcia v. United States*, No. 17-CV-5798 (JSR) (SLC), 2019 WL 5960207, at *2 (S.D.N.Y. Nov. 13, 2019), *report and recommendation adopted*, 2019 WL 6878346 (S.D.N.Y. Dec. 17, 2019). The factors a court considers include, among other things, the likelihood of success on the merits, the complexity of the legal issues, and the movant's ability to investigate and present the case. *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989) (per curiam); *Hodge v. Police Officers*, 802 F.2d 58, 60–62 (2d Cir. 1986). Because the Court has found that all claims asserted by Petitioner are either procedurally barred or lack merit, as discussed *infra*, no useful purpose would be served by appointing counsel. Accordingly, the motion for appointment of counsel is denied.

"Assistance provided by a fellow inmate is not legal representation." *Garavito-Garcia*, 2019 WL 5960207, at *3 (internal quotation marks and citation omitted). In addition, Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Rule 1.3 provide that "[o]nly

14

an attorney who has been so admitted or who is a member of the bar of this Court may enter appearances for parties." Because Mr. Garcia does not state that he is an attorney, and the Court cannot confirm whether he is or is not an attorney, Mr. Garcia cannot serve as Petitioner's designated representative. The motion for leave to allow Mr. Garcia's appearance as Petitioner's representative is therefore denied.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a federal court reviewing a state prisoner's habeas petition to give deference to a state court's decision on the merits. 28 U.S.C. § 2254(d). A federal court may not issue a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*; *see also Johnson v. Williams*, 568 U.S. 289, 292 (2013); *Chrysler v. Guiney*, 806 F.3d 104, 116-17 (2d Cir. 2015).

For the purposes of federal habeas review, "clearly established law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" or an

15

"unreasonable application of" clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412-13. The court reviews the last reasoned state court decision in the case. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). The state court's factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

State procedural default or failure to exhaust state court remedies will operate as a bar to review unless the petitioner can (1) establish cause for his or her default and actual prejudice resulting from the alleged violation of federal law, or (2) demonstrate that the failure to consider the petitioner's claims would result in a fundamental miscarriage of justice. *See Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012); *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011).

A petitioner can fulfill the cause requirement for default in two related ways. First, the petitioner can demonstrate that "some objective factor, external to Petitioner's defense, interfered with his ability to comply with the state's procedural rule."

16

*Gutierrez*, 702 F.3d at 111.   Alternatively, the petitioner can establish cause by demonstrating futility — specifically, that "prior state case law has consistently rejected a particular constitutional claim."  *Id.* at 112 (quoting *DiSimone v. Phillips*, 461 F.3d 181, 191 (2d Cir. 2006)).   To establish prejudice, the petitioner must demonstrate that the alleged error resulted in "in "substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions."  *Id.* (internal quotation marks and citation omitted).

Even if the petitioner is unable to establish cause and prejudice, the court may excuse the procedural default if the petitioner can show that a fundamental miscarriage of justice would result, *i.e.*, "that he is actually innocent of the crime for which he has been convicted."  *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002).   "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Id.* (alteration in original) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

In reviewing the instant petition, the court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal quotations and citations omitted); *Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir. 1983) (noting that courts should review pro se habeas

17

petitions with a lenient eye).  Consequently, the court is obliged to interpret Petitioner's pleadings as raising the strongest arguments they suggest.  *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009).

A petitioner can seek federal habeas corpus relief only after he exhausts state court remedies and thus provides the state courts a fair and full opportunity to review the merits of the claim.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  In other words, a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it."  *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

## DISCUSSION

## I.   Ground One: Weight of the Evidence

Petitioner renews his argument made to the Appellate Division that the verdict was against the weight of the evidence.  (Pet. at 5.)  For the reasons set forth below, Petitioner's claim regarding the weight of the evidence is not cognizable on habeas review, and, to the extent his Petition could be interpreted as renewing his legal sufficiency claim made to the Appellate Division, the claim is without merit.

18

### A.   Weight of the Evidence

"Petitioner's claim that his conviction was against the weight of the evidence is not a basis for habeas relief." *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006). Specifically, a challenge to a verdict based on the weight of the evidence is a "pure state law claim" whereas an argument that the evidence was not legally sufficient to support a conviction "is based on federal due process principles." *Douglas v. Portuondo*, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002). Accordingly, because Petitioner's weight of the evidence argument "raises [only] an error of state law . . . habeas review is not available. *Id*; see also *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (habeas corpus review not available to remedy alleged error of state law). Notwithstanding the above, because the Petitioner is proceeding *pro se*, the Court will construe his claim[7] "as a constitutional claim that his conviction was based on legally insufficient evidence, which is a cognizable habeas corpus claim." *Silva v. Keyser*, 271 F. Supp. 3d 527, 538-39 (S.D.N.Y. 2017). As noted *supra*, Petitioner raised a legal sufficiency claim in his counseled brief to the Appellate Division.

---

[7] A close read of the "supporting facts" for Petitioner's claim supports a broad interpretation of the claim, as Petitioner argues that there is "no evidence" that he was aware of C. Bello's "larcenous intent."  (Pet. at 5.)

19

**B.   Legal Sufficiency**

The Appellate Division rejected Petitioner's sufficiency of the evidence claim as unpreserved and "[i]n any event, viewing the evidence in the light most favorable to the [prosecution], [found] that it was legally sufficient to establish the [Petitioner]'s guilt beyond a reasonable doubt." *Carillo*, 127 N.Y.S.3d at 779 (citation omitted).   In denying the claim as unpreserved, the Appellate Division relied on state court precedent holding that motions to dismiss charges at the close of evidence must be directed at specific evidentiary deficiencies and that "general motions" fail to preserve legal sufficiency challenges for appeal. *See id.* (citing *People v. Hawkins*, 900 N.E.2d 946, 950-51 (N.Y. 2008)).   Although the Appellate Division's denial of Petitioner's claim as unpreserved was made pursuant to an independent state law ground, the Court finds that the procedural bar is not adequate to prevent federal collateral review in Petitioner's case.

**1.   Procedural Bar**

New York courts have long required that objections be addressed to the specific deficiency in the evidence to preserve an issue for appeal, in order to allow the trial judge to evaluate the legal merits of the motion.   *See Hawkins,* 900 N.E.2d at 950-51; *People v. Gray,* 652 N.E.2d 919, 922 (N.Y. 1995).   New York's preservation rule suffices as an independent state law ground, *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007), but the

20

remaining issue is whether it is "adequate" to prevent federal collateral review. *Id.* at 218. A state preservation rule is "only adequate to support the judgment and foreclose review of a federal claim if it is 'firmly established and regularly followed' in the state," but "even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.'" *Garvey v. Duncan*, 485 F.3d 709, 713—14 (2d Cir. 2007) (citation omitted).

Here, Petitioner's counsel preserved the issue of the sufficiency of the evidence by identifying specific evidentiary deficiencies. At the close of the prosecution's case, Petitioner's counsel moved for a trial order of dismissal:

> MR. STRAUSS: I'm similarly going to ask that the indictment be dismissed against my client, Martin Carillo, completely.
>
> The People have failed to put forth a prima facie case, that he did anything in this case.
>
> No weapons recovered from him.
>
> He doesn't make any statements at all.
>
> No property is recovered from him.
>
> He's not linked to any evidence whatsoever through DNA fingerprints or anything else in this case, Judge.

(Tr. at 1344-45.) Petitioner's counsel continued with his motion, arguing that the only evidence against Petitioner was the testimony of Luis Juarez, and that Luis's testimony was not corroborated by

other evidence and lacked credibility. (*Id.* at 1345-46.)
Petitioner's counsel closed by arguing that Luis was "wrong about
everything" and his testimony could not be believed, thus
supporting dismissal of the charges against Petitioner. (*Id.* at
1347.) After hearing motions to dismiss from Petitioner's co-
defendants, the trial court denied all of the motions. (*Id.* at
1356.)

At the close of trial, defense counsel for co-defendant C.
Bello renewed his motion to dismiss, and argued as follows:

> MR. FARRELL: [Renews original motion] I'm also going to
> add that, with respect to the felony murder, I submit
> the evidence falls short of one of the elements you are
> going to read tomorrow.
>
> That being that there was a logical link between the
> commission of the robbery, the underlying crime.
>
> And the death was not just coincidental to the commission
> of that crime.
>
> In other words, it's our view of the evidence that there
> was no robbery of Juan [Carlos] Juarez, no evidence that
> supports it.
>
> The best evidence is there was a robbery of his brother,
> but that was going on a different place, it was a
> distance away from him, and had nothing to do with
> furthering the stabbing to death of Juan [Carlos]
> Juarez.

(*Id.* at 1672-73.) Petitioner's counsel, Mr. Strauss, stated that
he was "going to join in both co-counsel's motions, motion to
dismiss, this time under the higher standard of beyond a reasonable

doubt now that the case is completed." (*Id.* at 1673.)   The trial court denied the motion.   (*Id.*)

Petitioner does not argue that he had cause for any procedural default, and he has not made a substantial showing of actual innocence.   *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Nonetheless, the procedural bar applied by the Appellate Division to deem Petitioner's claim unpreserved did not rest on an adequate ground.   To determine the adequacy of the Appellate Division's procedural bar, the Court looks to the factors set forth in *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003).   The three factors are:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Id.*   Applying the *Cotto* factors, the Court finds that the procedural bar applied by the Appellate Division is inadequate to deem Petitioner's claim procedurally barred.

*First,* it is not clear that "perfect compliance" with the state rule would have changed the trial court's decision.   As the record reflects, Petitioner's counsel clearly and specifically identified what he viewed as the deficiencies in the evidence as

23

concerning Petitioner – a lack of physical evidence tying him to the assault on the Juarez brothers, and what counsel perceived as a lack of credibility and corroboration regarding Luis Juarez's testimony. (Tr. at 1344-47.) Similarly, the renewed motion following the close of evidence, made by Petitioner's co-defendant's counsel and joined by Petitioner, clearly set forth an additional ground for dismissal – a perceived lack of evidence regarding the theft of property, one of the elements of robbery in the first degree. (*Id.* at 1672-73.) Thus, the trial court was on notice of Petitioner's counsel's arguments, and it is not clear that "perfect compliance" would have changed the trial court's decision. Thus, this factor favors Petitioner. *Cotto*, 331 F.3d at 240.

*Second*, the Court finds that state caselaw indicates that compliance with the rule was demanded in the specific circumstances of Petitioner's case. As discussed *supra*, New York case law requires that objections be addressed to the specific deficiency in the evidence to preserve an issue for appeal, in order to allow the trial judge to evaluate the legal merits of the motion. *See Hawkins,* 900 N.E.2d at 950–51; *People v. Gray,* 652 N.E.2d 919, 922 (N.Y. 1995). Thus, this factor weighs against Petitioner.

*Third,* the Court finds that Petitioner "substantially complied" with the rule given "the realities of trial." *Cotto*, 331 F.3d at 240. The most convincing evidence of substantial

compliance is the determinations made by the Appellate Division regarding whether Petitioner's co-defendants properly preserved their legal sufficiency arguments.  In each case, the Appellate Division found that Petitioner's co-defendants had properly preserved their legal sufficiency arguments for appellate review. *See People v. Bello*, 110 N.Y.S.3d 336 (2019) (rejecting Carmello Bello's legal sufficiency claim on the merits); *People v. Bello*, 152 N.Y.S.3d 328 (2021) (rejecting Miguel Bello's legal sufficiency claim on the merits).  The Court finds no meaningful difference[8] in the arguments made by co-defendants M. Bello and C. Bello.  Accordingly, because the Court finds that "perfect compliance" would not have changed the trial court's decision, and because Petitioner "substantially complied" with the rule, the procedural bar is inadequate to sustain the state court's judgment. *See Ojar v. Greene*, No. 07-CV-3674 (JG), 2008 WL 428014, at *9 (E.D.N.Y. Feb. 15, 2008) (finding a generalized motion for a mistrial based on prosecutorial misconduct appeared to comply with New York's contemporaneous objection rule); *Battee v. Phillips*, No. 04-CV-4334 (ENV), 2010 WL 2026443, at *9 (E.D.N.Y. May 20,

---

[8] M. Bello's motion to dismiss at the close of the prosecution's case was made immediately prior to Petitioner's and makes similar arguments.  (Tr. at 1342-44.)  C. Bello's motion to dismiss followed Petitioner's and also made similar arguments.  (*Id.* at 1350-54.)  The prosecution addressed the motions made by the Defendants together prior to the trial court denying the motions.  (*Id.* at 1354-55.)  As noted previously, Petitioner renewed his earlier motion and joined in C. Bello's motion to dismiss at the close of the Defense case.  (*Id.* at 1672-73.)  The trial court rejected both motions at the same time.  (*Id.* at 1673.)

2010) (finding incorrect invocation of procedural inadequate to preclude federal habeas review on the merits); *Clarke v. Goord*, No. 07-CV-366 BMC), 2007 WL 2324965, at *2 (E.D.N.Y. Aug.10, 2007) (state court's misapplication of procedural bar deemed inadequate to preclude habeas review of right-to-counsel claim). Despite the fact that the Court is not precluded from reviewing Petitioner's legal sufficiency claim, however, Petitioner's claim nonetheless fails on the merits, as discussed below.

### C.   Merits

After finding a procedural bar applied to Petitioner's legal sufficiency claim, the Appellate Division went on to state "[i]n any event, viewing the evidence in the light most favorable to the [prosecution], we find that it was legally sufficient to establish the [Petitioner]'s guilt beyond a reasonable doubt." *Carillo*, 127 N.Y.S.3d at 779 (citation omitted). When a state court finds that a procedural bar applies, but goes on, in the alternative, to dispose of a claim on the merits, the alternative merits holding is entitled to deference under § 2254(d). *See Zarvela v. Artuz*, 364 F.3d 415, 417 (2d Cir. 2004) (state court's ruling that petitioner's claim was unpreserved but "in any event, was without merit," was a disposition on the merits entitled to § 2254(d) deference); *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015) (where state court wrote that it "decline[d] to reach the merits," but later described petitioner's claim as both "procedurally

26

barred and meritless," and engaged in extensive discussion of the merits, federal court treated state ruling as a determination on the merits entitled to § 2254(d) deference).   Accordingly, the Court finds the Appellate Division's alternative merits-based decision is entitled to AEDPA deference.[9]

Sufficiency of the evidence claims in federal habeas cases "face a high bar," because they are subject to two layers of judicial deference.  *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012).  First, "evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).   Second, "a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas [review] unless the 'decision was objectively unreasonable.'"   *Id.* (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)).

When "faced with a record of historical facts that supports conflicting inferences," this Court must presume "the trier of

---

[9] The Court notes that there is some disagreement about whether an alternative merits-based decision is entitled to AEDPA deference when the decision "fairly appear[s] to rest primarily on state procedural law."  *Jimenez v. Walker*, 458 F.3d 130, 145 (2d Cir. 2006).  As Judge Gleeson noted in *Ojar*, because the Court finds the Appellate Division's decision on the merits was correct, discussed *infra*, the Court's conclusion would be the same regardless of whether AEDPA deference applied.  2008 WL 428014, at *11.

fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution" even if it is not affirmatively in the record. *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326). Therefore, "[a] habeas court will not grant relief on a sufficiency claim unless the record is 'so totally devoid of evidentiary support that a due process issue is raised.'" *Sanford v. Burge*, 334 F. Supp. 2d 289, 303 (E.D.N.Y. 2004) (quoting *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994)).

When reviewing a sufficiency of the evidence claim, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). To find Petitioner guilty of Murder in the Second Degree (felony murder), the jury had to find the prosecution proved two elements: (1) Petitioner and his co-defendants, "acting in concert with each other, and others, committed the crime of robbery"; and (2) in the course of and in furtherance of the commission of such robbery, or in immediate flight therefrom, the [Petitioner] or another participant in the commission of that felony caused the death of Juan [Carlos] Juarez, and that Juan [Carlos] Juarez was not a participant in that felony." (*See* Tr. at 1946-47); *see also* N.Y. Penal Law § 125.25(3). To find Petitioner guilty of robbery in the first degree, the jury had to find the prosecution proved two elements: (1) that Petitioner and his co-defendants, "acting in concert with each other, and others, forcibly stole property

from [Luis]¹⁰ Juarez"; and (2) "in the course of the commission of the crime, the [Petitioner] or another participant in the crime possessed a dangerous instrument, and used or threatened the immediate use of that dangerous instrument."  (*See* Tr. at 1952-53); *see also* N.Y. Penal Law § 160.15(3).

Petitioner challenges the sufficiency of the evidence in establishing his "larcenous intent." (Pet. at 5.)  Under New York law, the *mens rea* for robbery is "the intent to permanently deprive the owner of that property."  *People v. Miller*, 661 N.E.2d 1358, 1362 (N.Y. 1995) (noting that the requisite intent is the same for first, second, or third degree robbery).  Because of the group nature of the instant crime, special instructions for acting in concert also apply to Petitioner's behavior.  As the trial court charged, an individual can be criminally liable for the conduct of another "when, acting with the state of mind required for the commission of that offense, he solicits, request, commands, importunes, or intentionally aids such person to engage in such conduct."  (*See* Tr. at 1953-54); *see also* N.Y. Penal Law §20.00.

State appellate courts have recognized that the element of intent is fact-based, and that "inferences to be drawn [regarding the defendant's intent], if not unreasonable, are within the

---

¹⁰ Because Count Four and Count Five charged the same conduct but as to two separate victims – Juan Carlos and Luis Juarez, respectively – the trial court noted that Count Five was "the same as number four, but it applies to Luis Juarez." (Tr. at 1953.)  Petitioner was found guilty of Count Five. (*Id.* at 2025.)

exclusive domain of the finders of fact, not to be disturbed" by appellate courts. *People v. Bueno*, 960 N.E.2d 405, 412 (N.Y. 2011) (citing *People v. Barnes*, 406 N.E.2d 1071, 1074 (N.Y. 1980)). Furthermore, the New York Court of Appeals has held that a conviction can be upheld without direct evidence of intent, so long as there exists enough evidence to infer a defendant's requisite intent from their conduct and surrounding circumstances. *See People v. Rodriguez*, 957 N.E.2d 1133, 1135 (N.Y. 2011).

Here, evaluating the evidence in the light most favorable to the state, and drawing all reasonable inferences therefrom, this Court finds that a rational jury could have concluded that Petitioner had requisite larcenous intent to sustain his convictions. At trial, the State presented witness testimony from Luis Juarez, who was initially approached by Petitioner and C. Bello, and identified Petitioner as part of the group that attacked both him and his brother. (Tr. at 301-02, 329-31.) Luis further described the group as taking his bicycle and other property before they fled, and this testimony was corroborated by the recovery of his bag and bicycle from Vernon Avenue. (*Id.* at 312-13, 406-08, 413-18.) Luis also identified Petitioner at the scene of Petitioner's arrest on Vernon Avenue shortly after the robbery, and following a pursuit by Luis and the police in which Luis did not lose sight of his assailants. (*Id.* at 311-13, 329-31, 891-93.) Testimony from police officers who engaged in the chase also

established that Petitioner fled from the area of the robbery with his co-defendants.  (*Id.* at 876-93.)  In viewing the evidence in the light most favorable to the prosecution, this court finds that a rational jury could have found, by proof beyond a reasonable doubt, that Petitioner acted in concert with his co-defendants, including C. Bello, and shared their intention to steal the property of the Juarez brothers.  Therefore, the Court finds that there was legally sufficient evidence for the jury to conclude Petitioner acted with the culpable mental state for the commission of first-degree robbery.  Accordingly, the legal sufficiency claim is denied because it does not support habeas relief.

## II.  Ground Two: Excessive Sentence

Petitioner argues that imposition of the maximum sentence of 25 years of incarceration followed by 5 years of post-release supervision is excessive because Petitioner was less complicit in the charged offenses than his co-defendants. (Pet. at 6.)  Whether interpreted as arising under state law or under the Eighth Amendment, this Court finds no grounds for habeas relief in connection with the Petitioner's sentence.

### A.   State Law Excessive Sentence Claim

If Petitioner intends to renew his excessive sentence claim that he made to the Appellate Division, that claim is denied because it does not provide a federal basis for habeas relief.  On direct appeal, Petitioner argued for the Appellate Division to

31

modify his sentence because "the record does not justify the lengthy term meted out to him." (Appellant Br. at 32.) The Appellate Division granted Petitioner's request and modified the judgment to reduce his sentence on both counts by five years, as discussed *supra*. *Carillo*, 127 N.Y.S.3d at 778-779.

Petitioner's counsel did not argue, nor could he, that the sentence imposed was outside the statutory range for the crimes of which Petitioner was convicted, or otherwise illegal. (*Id.* at 33.) Petitioner's counsel instead noted that relief could be granted even if the sentence imposed was not an abuse of discretion, and cited New York case law citing CPL § 470.15(6) as providing the statutory authority for the Appellate Division to modify an unduly harsh or severe sentence "in the interest of justice." (*Id.* at 32.)

Numerous courts in this circuit have found that "a claim for a reduction in sentence pursuant to [CPL] § 470.15 does not, without more, raise a federal constitutional issue and is therefore not cognizable on habeas review." *Bonilla v. Lee*, 35 F. Supp. 3d 551, 572 (S.D.N.Y. 2014); *see also Santiago v. Shanley*, No. 20-CV-3530 (RPK), 2023 WL 3321665, at *3 (E.D.N.Y. May 8, 2023) (finding petitioner's renewed reduction-of-sentence claim under state law was not cognizable on habeas review). Thus, to the extent Petitioner seeks to renew his reduction-of-sentence claim

and excessive sentence claim under state law, Petitioner's claim is denied because it is not cognizable under federal habeas review.

### B.   Eighth Amendment Claim

To the extent the petition may be liberally construed to contend that Petitioner's sentence violates the Eighth Amendment, his contention lacks clarity, as it merely argues the sentence was "excessive" given Petitioner was less complicit than his co-defendants. (Pet. at 6.)   Nevertheless, even construing the Petition as implicating Petitioner's Eighth Amendment rights, it fails for two reasons.

*First*, Petitioner's claim is procedurally barred. Petitioner's direct appeal made no reference to the Eighth Amendment, and merely claimed that the "record does not justify the lengthy term." (Appellant Br. at 32.)   "Because petitioner's 'Appellate Division brief presented his excessive sentence claim in terms of state law, invoking the power of a state appellate court to reduce sentences in the interest of justice under C.P.L. § 470.15(6)(b),' his exclusive 'reliance on a state procedural law granting courts discretionary authority to reduce sentences d[id] not fairly present his[] constitutional claim [to the] state court.'"   *Santiago*, 2023 WL 3321665, at *3 (quoting *King v. Cunningham*, 442 F.Supp.2d 171, 181 (S.D.N.Y. 2006)) (collecting cases).   "Because petitioner 'did not claim his sentence deprived him of any federal constitutional right' on direct appeal in state

court, he has 'failed to exhaust the remedies available in state court' with respect to any claim under the Eighth Amendment, and so the 'court[] need not consider the claim.'" *Id.* (quoting *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)). Accordingly, the claim was not properly exhausted and cannot be considered by this Court.

To overcome a procedural bar, Petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. However, Petitioner has failed to meet his burden. Petitioner has not provided any explanation for his failure to properly exhaust his Eighth Amendment claim in state court or offered proof of actual innocence. Thus, he may not overcome the procedural bar for any constitutional claim regarding the excessiveness of his sentence.

*Second*, notwithstanding the procedural bar, even if the Court could consider Petitioner's claim, it is without merit. It is well-settled law that "[n]o federal constitutional issue is presented where . . . the sentence falls within the range prescribed by the state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (affirming dismissal of petition for habeas relief where Petitioner challenged as cruel and unusual a sentence within the range prescribed by state law). Here, both the original

34

sentence of 25 years to life and the reduced sentence of 20 years to life for felony murder were within the permissible range prescribed by state law for a Class A-I felony, including Murder in the Second Degree, of which Petitioner was convicted. *See* N.Y. Penal Law §§ 70.00; 125.25(3) (determinate portion of imprisonment shall be not less than 15 nor more than 25 years).  Petitioner's original sentence of 25 years and reduced sentence of 20 years for the robbery in the first degree count were similarly within the permissible statutory range.  *See* N.Y. Penal Law §§ 70.00; 160.15(3) (term of imprisonment for Class B felony shall not exceed 25 years).

Furthermore, "there is no Supreme Court case that has ever found a sentence to be in violation of the Eighth Amendment merely because of its length." *Santiago*, 2023 WL 3321665, at *4 (citation omitted); *see also Carmona v. Ward*, 576 F.2d 405, 408 (2d Cir. 1978) ("[the Supreme] Court has never found a sentence imposed in a criminal case violative of the Eighth Amendment merely because of its length").  Petitioner cannot succeed in showing that, in reducing his 25 years to life sentence to 20 years to life, the Appellate Division rendered a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1).  Accordingly, Petitioner's excessive sentence claim is procedurally barred, without merit, and is denied.

35

**CONCLUSION**

For the foregoing reasons, Petitioner's Section 2254 petition is respectfully **denied** and **dismissed** in its entirety. Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is denied and shall not issue. *See* 28 U.S.C. § 2253(c); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); Rules Governing Section 2254 and 2255 Cases in the United States District Courts, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

The Clerk of Court is respectfully requested to enter judgment in favor of Respondent and close this case. In accordance with 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this order would not be taken in good faith and thus denies in forma pauperis status for the purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is requested to serve a copy of this Memorandum and Order and the Judgment on Petitioner and note such service on the docket by August 6, 2024.

**SO ORDERED**

Dated:    August 2, 2024
          Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

36